UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:22-CV-36

| | |
|---|---|
| TAMARA SUREY (f/k/a MILLER), | |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | **COMPLAINT** |
| LIFERESTORE MD USA LLC NC1 LLC; LIFERESTORE MD USA LLC; DAVID AKINA; and ALLEN MEGLIN, | |
| Defendants. | |

Plaintiff, Tamara Surey, f/k/a Miller ("Ms. Surey" or "Plaintiff"), hereby complains and alleges against Defendants LIFERESTORE MD USA LLC NC1 LLC, LIFERESTORE MD USA LLC, David Akina, and Allen Meglin (collectively, "Defendants") the following:

## INTRODUCTION

1. Ms. Surey brings this action against Defendants for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201 *et seq.*), the North Carolina Wage and Hour Act ("NCWHA" - N.C. Gen. Stat. §§ 95-25.1 *et seq.*), and North Carolina common law.

2. Defendants failed to pay Ms. Surey at least the prevailing minimum wage, failed to pay her overtime wages, failed to pay her for all hours worked, and failed to pay Ms. Surey's earned wages when due on the regular payday.

1

3. Shortly after Ms. Surey opposed Defendants' illegal pay practices and reported them to a government agency, Defendants retaliated by terminating her and withdrawing her written employment offer.

## THE PARTIES

4. Plaintiff Tamara Surey (f/k/a Miller) is a citizen and resident of the United States and North Carolina. During the relevant time period of this action, Plaintiff's name was Tamara Miller.

5. Defendant David Akina ("Defendant Akina") is an adult person and registered with the North Carolina Secretary of State as a manager of Defendant LifeRestore MD USA LLC NC1 LLC. Defendant Akina, along with Defendant Meglin, supervised and managed Ms. Surey's employment during the relevant time period of this action. Defendant Akina offered Ms. Surey employment on behalf of Defendants and personally withdrew that offer of employment and terminated Ms. Surey after she complained about not being paid (described *infra*). On multiple occasions, Defendant Akina assured Ms. Surey that she would be paid wages for her time spent working to open Defendants' North Carolina venture.

6. Defendant Allen Meglin ("Defendant Meglin") is an adult person, a licensed physician, and registered with the North Carolina Secretary of State as a manager of Defendant LifeRestore MD USA LLC NC1 LLC. Defendant Meglin, along with Defendant Akina, supervised and managed Ms. Surey's employment during the relevant time period of this action. Defendant Meglin described himself as a 50% owner of Defendants' North Carolina venture (at which Plaintiff worked) and was Ms. Surey's registered supervisor with the North Carolina Medical Board during the relevant period.

7. Defendant LIFERESTORE MD USA LLC NC1 LLC, doing business as "RestoreDoc," "RestoreDoc MD," and/or "RestoreDoc NC" is, and at all relevant times was, a for-profit entity registered in the state of North Carolina, with a principal office located at 1427 MILITARY CUTOFF RD #104, WILMINGTON, NC 28403-3694 (the location that Ms. Surey worked to open). Defendant LIFERESTORE MD USA LLC NC1 LLC acted by and through its managers, officers, owners, and other agents.

8. Defendant LIFERESTORE MD USA LLC, doing business as "RestoreDoc," "RestoreDoc MD," and/or "LIFERESTORE MD USA GROUP LLC" is, and at all relevant times was, a for-profit entity incorporated under the laws of Delaware, doing business in North Carolina and Texas (and possibly other states). LIFERESTORE MD USA LLC is managed by Defendant Akina (specifically named on documents filed with the State of Texas as the entity's "governing person"). Defendant LIFERESTORE MD USA LLC acted by and through its managers, officers, owners, and other agents.

9. During her employment, Ms. Surey was given a "restoredoc.com" email address, the same as LIFERESTORE MD USA LLC's officers (including, but not limited to, Defendant Akina and LIFERESTORE MD USA LLC's COO Bob Olovsson). As of the time of this filing, the "restoredoc.com" webpage represents it has a location in Dallas, Texas, and a location in Wilmington, North Carolina (the same location which Ms. Surey worked to open). A related social media page represented Ms. Surey as a new employee of the company on September 10, 2021 ("As we open our new Wilmington location, we proudly welcome Tamara Miller, PA-C to our clinical practice").

10. Plaintiff is informed and believes that at all relevant times all Defendants and each of them, were and are the agents, servants, employees, joint venturers, alter egos, and/or partners

of each of the other Defendants, and were, at all such times, acting within the course and scope of their employment and/or agency; and that each and every Defendant, while acting as a high corporate officer, director, and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed, and ratified each and every action taken by the other co-Defendants, as herein alleged, and was responsible in whole or in part for the matters referred to herein.

11. Plaintiff is further informed and believes that Defendants, and each of them, are now and/or at all relevant times were members of and/or engaged in a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuit of that joint venture, partnership, and common enterprise and, as such, were co-employers of Plaintiff during all relevant times described herein.

12. Plaintiff is further informed and believes that Defendants, and each of them, at all relevant times concurred with, contributed to, approved of, aided and abetted, condoned, and/or otherwise ratified the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

## JURISDICTION AND VENUE

13. This action arises under federal statutes, including the FLSA. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims brought herein constitute a federal question under the laws of the United States.

14. This Court has supplemental jurisdiction over Ms. Surey's state law claims pursuant to 28 U.S. Code § 1367 because they arise out of the same circumstances as her federal claims and are based upon a common nucleus of operative fact.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants conduct business in this district and are subject to personal jurisdiction in this district for the purposes of this action.

16. On March 7, 2022, Ms. Surey filed a Retaliatory Employment Discrimination Complaint with the N.C. Department of Labor under N.C. Gen. Stat. § 95-240 *et seq.* ("REDA") alleging Defendants' unlawful retaliation because she engaged in protected activity. Upon receipt of a Right-to-Sue letter, Ms. Surey intends to amend her Complaint to include violations of REDA.

## **RELEVANT FACTS**

17. Plaintiff Tamara Surey is, and at all relevant times to this action was, a licensed Physician Assistant and primary care provider.

18. On or about July 20, 2021, Defendants Akina and Meglin induced Ms. Surey to resign her employment at the time (where she had a significant patient following) in order to work for Defendants' soon-to-be-opened medical clinic, "RestoreDoc NC." Based on Defendants' offer of employment, Ms. Surey put in 30 days notice and resigned her previous employment, effective August 20, 2021.

19. On or about August 23, 2021, Ms. Surey began working for Defendants, traveling to a medical office operated by Defendant Meglin in Savannah, Georgia, for training as part of her new role. Ms. Surey trained in Georgia with Defendant Meglin (and his staff there) and then returned to North Carolina on or about August 25, 2021.

20. On or about August 25, 2021, Ms. Surey was told by Defendants that she would be paid at a rate of $52.88/hour for work done prior to the clinic's opening and that her travel expenses would be reimbursed. Defendant Akina provided Ms. Surey with an offer letter dated August 25, 2021, on "RestoreDoc MD" letterhead, for the "full-time position of Physician Assistant Provider,"

5

with "an anticipated start date of 1 Oct 2021" (the date the clinic was expected to open), at a starting annual salary of $110,000 (plus a monthly stipend for health insurance and potential bonuses).

21. On or about August 30, 2021, Defendants told Ms. Surey to do "whatever needs to be done to get the clinic open" and that any incurred expenses would be reimbursed.

22. From the end of August through September, 2021, Ms. Surey continued to put in her best efforts to prepare to open Defendants' North Carolina location, working long hours and expending thousands of dollars of her own money towards the effort (documenting and communicating these costs to Defendants, in the expectation they would be reimbursed as promised).

23. Throughout Ms. Surey's time working to get the North Carolina clinic ready for opening, Defendants Akina and Meglin continuously reaffirmed her efforts, including but not limited to in the following written communications (all 2021):

   a. August 30: "You're our lady" (Defendant Akina);

   b. August 31: "Stay the course…I'm so glad you joined us" (Defendant Meglin);

   c. September 13 (in response to images of the new office): "My personal opinion is that [it] looks f-word great!" (Defendant Meglin);

   d. September 14: "Nice job with the office" (Defendant Akina); and

   e. September 28: "Bravo! Just Bravo!" (Defendant Meglin).

24. Throughout Ms. Surey's employment, she kept Defendants informed of her hours worked and expenses incurred towards opening the clinic. As relayed to Defendants, on multiple occasions, Ms. Surey worked in excess of forty (40) hours in a week.

6

Case 7:22-cv-00036-BO     Document 1     Filed 03/07/22     Page 6 of 13

25. Nonetheless, Defendants failed to pay Ms. Surey for **any** of her time worked. During this time, Defendants also failed to pay at least one other employee working to open Defendants' North Carolina location.

26. On multiple occasions, Ms. Surey inquired with Defendants about her pay and the pay of at least one other employee at her location.

27. On September 27, 2021, Ms. Surey emailed Defendants Meglin and Akina to again request that herself and the other employee be paid, stating in part:

> "Christy has worked 153 hours over the past month and has not been paid yet. She is understandably very upset. It has gotten to the point where she has had bills overdue and her car is subject to being repossessed due to her not being able to make payments…She stated that **she has contacted the labor and wages board twice already regarding this** and has a lawyer advising her at this point as well…
>
> "I cannot fault Christy for her actions towards this in seeking legal counsel as **this issue of payment for both myself and her has been brought up at least 4 to 5 times by myself alone**. It is immensely frustrating as **I've worked over 150 hours prior to last week as well and have not received any payment either**. I feel like both Christy and myself have been more than understanding and simply want to be paid for our time and service thus far as I know personally I've worked very hard to get the office as ready as possible to open." (emphasis added).

28. Through early October, 2021, Ms. Surey continued to seek the pay that she was due from Defendants, including but not limited to in the following texts to Defendant Akina (all 2021):

   a. October 6: "Hey David, Left you a voicemail yesterday regarding my pay. Tried calling you again just now as well. Your voicemail box is full."
   b. October 6: "David, I have tried calling you several times today. Please either return my call or let me know when I will be paid today."
   c. October 11 (at 10:05 am): "David, when can I expect to be paid today?"

29. On October 11, 2021, Ms. Surey made a complaint to the North Carolina Department of Labor ("NC DOL") against Defendants regarding her unpaid wages.

30. On October 11, 2021, Defendants terminated Ms. Surey at approximately 4:29 pm, **only *hours* after Ms. Surey complained to both Defendant Akina and the NC DOL about her unpaid wages**. Defendant Akina terminated Ms. Surey's employment (and written employment offer) by text, without any substantive explanation, stating: "We are regretfully rescinding our offer letter to you."

31. Defendants never paid Ms. Surey for any of the work she performed and Defendants failed to fully reimburse her for all of the expenses she incurred.

32. Due to Defendants' conduct (including, but not limited to, *supra*), the North Carolina location did not open as anticipated (on or about October 1, 2021) and patient appointments for Ms. Surey had to be canceled at the last minute.

33. After Ms. Surey's separation from Defendants (described *supra*), Defendants continued to use Ms. Surey's name and/or likeness in marketing publications, despite Ms. Surey requesting that Defendants cease such behavior; and, upon information and belief, Defendants provided the public (including former patients) false and disparaging information regarding Ms. Surey's employment and separation. Ms. Surey received numerous complaints from former patients as a result of Defendants' conduct, potentially putting her medical license in jeopardy.

34. Based on the foregoing actions (and others), Ms. Surey believes and avers that Defendants unlawfully failed to pay her at least the prevailing minimum wage, failed to pay her overtime wages, failed to pay her for all hours worked, and failed to pay Ms. Surey's earned wages when due on the regular payday. After Ms. Surey opposed Defendants' illegal pay practices and

reported them to a government agency, Defendants retaliated by terminating her, withdrawing her written employment offer, and falsely disparaging her to the public.

## FIRST CLAIM FOR RELIEF
**Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201 *et seq.*)**
**[1] Failure to Pay Overtime; [2] Failure to Pay Minimum Wage; and [3] Retaliation**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. The FLSA requires employers to pay non-exempt employees 1.5 times the employee's regular rate of pay for all hours worked in excess of forty (40) hours during any workweek.

37. The FLSA requires employers to pay non-exempt employees at least minimum wage for all hours worked ($7.25 an hour during the period in question).

38. During all relevant times, Defendants qualified as an employer under the FLSA.

39. During all relevant times, Ms. Surey qualified as a non-exempt employee under the FLSA.

40. Throughout her employment, Defendants failed to pay Ms. Surey at least the prevailing minimum wage for all hours worked.

41. During multiple weeks of her employment, Ms. Surey worked in excess of forty (40) hours during a workweek.

42. Defendants failed to pay Ms. Surey overtime compensation.

43. Ms. Surey repeatedly raised concerns with Defendants about their failure to pay her and another employee.

44. Just hours before she was terminated, Ms. Surey complained again to Defendant Akina and then to a government agency (the NC DOL) about Defendants' improper and illegal pay practices.

45. In retaliation, Defendants terminated her, withdrew her written employment offer, and falsely disparaged her to the public.

46. Defendants' actions constituted violations of the FLSA and were done willfully.

## SECOND CLAIM FOR RELIEF
**North Carolina Wage and Hour Act ("NCWHA" - N.C. Gen. Stat. §§ 95-25.1 *et seq.*)**
**[1] Failure to Pay Overtime; [2] Failure to Pay for All Hours Worked on Regular Payday; and [3] Failure to Pay Minimum Wage**

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. The NCWHA requires every employer to pay each employee who works longer than forty (40) hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of forty (40) per week.

49. The NCWHA requires every employer to pay every employee all wages and tips accruing to the employee on the regular payday, which must be no later than monthly.

50. The NCWHA requires employers to pay employees at least minimum wage for all hours worked ($7.25 an hour during the period in question).

51. During all relevant times, Defendants qualified as an employer under the NCWHA.

52. During all relevant times, Ms. Surey qualified as an employee under the NCWHA.

53. For all of Ms. Surey's employment, Defendants failed to properly compensate her at the agreed-upon and promised rate for all hours worked.

54. For all of Ms. Surey's employment, Defendants failed to properly compensate her on a regular payday.

10

55. For all of Ms. Surey's employment, Defendants failed to pay her at least the prevailing minimum wage for all hours worked.

56. During multiple weeks of her employment, Ms. Surey worked in excess of forty (40) hours during a workweek.

57. Defendants failed to pay Ms. Surey overtime compensation.

58. Defendants' actions constituted violations of the NCWHA and were done willfully.

## THIRD CLAIM FOR RELIEF
### Wrongful Discharge in Violation of North Carolina Public Policy

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60. Firing an employee for refusing to work for less than the statutory minimum wage violates North Carolina public policy. *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 350 (N.C. 1992)

61. To the extent Defendants terminated Ms. Surey (and/or withdrew her offer of employment) for refusing to continue to work for Defendants for no pay and/or exercising her protected rights, Defendants wrongfully discharged Ms. Surey in violation of the public policy of North Carolina.

62. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

63. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

64. Defendants' officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Tamara Surey respectfully requests that this Court enter judgment in her favor and grant her the following relief:

1. Order Defendants to compensate Ms. Surey, reimburse her, and make her whole for any and all pay and benefits Ms. Surey would have received had it not been for Defendants' illegal actions, including but not limited to unpaid wages, unpaid minimum wages, unpaid overtime wages, back pay, front pay, salary/pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

2. Order Defendants to compensate Ms. Surey, reimburse her, and make her whole for any and all other damages caused by Defendants' illegal actions, including but not limited to any damage to her medical accreditations and professional standing;

3. Award Ms. Surey liquidated (and/or treble) damages equal in amount to the total of her unpaid compensation;

4. Order Defendants to pay punitive damages to punish Defendants for their willful, deliberate, malicious, and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

5. Award Ms. Surey all reasonable costs and attorneys' fees incurred in connection with this action;

6. Award Ms. Surey injunctive relief to prohibit Defendants' further unlawful conduct in the future;

7. Award Ms. Surey prejudgment and postjudgment interest at the highest rates allowable by law;

8. Award Ms. Surey such other and further equitable and legal relief as appropriate under the circumstances; and

9. Grant Ms. Surey a trial of this matter by a jury.

## JURY TRIAL DEMAND

Plaintiff Tamara Surey demands a trial by jury for all issues of fact.

/s/ L. Michelle Gessner
L. Michelle Gessner (NC Bar No. 26590)
Nicole K. Haynes (NC Bar No. 47793)
GESSNERLAW, PLLC
1213 Culbreth Drive, Suite 426
Wilmington, North Carolina 28405
Telephone: (704) 234-7442
Facsimile: (980) 206-0286
Email: michelle@mgessnerlaw.com
Emiel: nicole@mgessnerlaw.com
*Attorneys for Plaintiff*