IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:22-cv-00036-M

TAMARA SUREY,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )            ORDER
                                       )
LIFERESTORE MD USA LLC NC1 LLC,        )
LIFERESTORE MD USA LLC,                )
DAVID AKINA, and                       )
ALLEN MEGLIN,                          )
                                       )
        Defendants.                    )

This matter comes before the court on Plaintiff's[1] motion for partial summary judgment on liability pursuant to Rule 56 of the Federal Rules of Civil Procedure [DE 86]. Plaintiff seeks judgment against Defendant David Akina regarding his liability for Plaintiff's claims of unpaid minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") and claim of failure to pay as promised in violation of the North Carolina Wage and Hour Act, §§ 95-25.1 et seq. ("NCWHA"). For the reasons that follow, the motion is granted in part and denied in part.

Plaintiff initiated this action against Defendants on March 7, 2022, and filed the operative Amended Complaint on October 18, 2022, alleging essentially that Defendants violated federal and state wage and hour statutes by failing to pay her for hours worked preparing to open a new

---

[1] Plaintiff filed this action under her current name, Tamara Surey; however, at all times relevant to her claims, she was known as Tamara Miller. For ease of reference, the court will identify her as "Plaintiff."

medical office in Wilmington, North Carolina, and violated state law by terminating her employment in retaliation for her submission of a wage complaint with the North Carolina Department of Labor. *See* Am. Compl., DE 30. Defendants filed Answers to the amended pleading, and the case proceeded to discovery pursuant to a Scheduling Order issued on January 18, 2023. DE 38.

On June 13, 2023, counsel for Defendants LifeRestore MD USA LLC NC1 LLC, LifeRestore MD USA LLC, and David Akina moved to withdraw their representation; after a hearing on July 7, 2023, the court granted the motion and permitted these Defendants a period of time in which to retain substitute counsel. DE 41, 45, 46. When they failed to do so, the court entered default against the corporate Defendants on August 11, 2023, and directed that the case proceed in accordance with the operative scheduling order. DE 48. On October 2, 2023, Plaintiff filed a motion for entry of default against Akina, stating simply that Akina "has failed to comply with this Court's order of July 7, 2023 (ECF No. 46) and/or has not filed or served required pro se forms or a notice of appearance of any kind." DE 50. The court found this request—unsupported by any additional information, caselaw, or affidavit—insufficient under Rule 55(a), particularly given that an Answer had been filed on Akina's behalf (DE 31) and a copy of the July 7, 2023 order addressed to Akina had been returned as "undeliverable" (DE 47). The court denied Plaintiff's motion. DE 67.

On May 20, 2024, the court found improper under Rule 7(b) the Plaintiff's request for relief, made in a footnote to her Motion for Partial Summary Judgment, in which she requested a "short extension of time to file a similar [motion for] partial summary judgment as to Akina's individual liability under the FLSA and NCHWA" if the court determined not to grant her motion for entry of default. DE 75. The court also noted that Akina had filed nothing and made no

appearance in this case since the court's July 7, 2023 order, despite the possibility that Akina may have been contacted and/or knew about the status of the case. *Id.* The court ordered that, on or before June 10, 2024, the Plaintiff file a fully supported motion under Rule 55(a), including a description of her efforts (if any) to contact Akina about this case, as well as a proper motion under Rule 6 for leave to file a dispositive motion out of time, if appropriate.

On August 27, 2024, the court denied Plaintiff's Rule 55(a) motion finding that Plaintiff failed to demonstrate the drastic sanction of striking the Answer and entering default against Akina was appropriate under the circumstances of this case. At the same time, the court granted Plaintiff a period of thirty days in which to file any Rule 56 motion against Akina. The present motion followed on September 26, 2024. The court reviewed the motion on January 28, 2025, and found that it was not served properly in accordance with Rule 5; the court directed Plaintiff's counsel to file a revised Certificate of Service demonstrating proper service of the motion on the Defendants. On February 2, 2025, Plaintiff filed a Certificate of Service, asserting that she had, in fact, mailed the motion to the Defendants on September 27, 2024, but "out of an abundance of caution," mailed the motion again to the Defendants on January 31, 2025 by "USPS certified mail," including tracking numbers. DE 91. Plaintiff's counsel states, "If/when the return receipts are received, the undersigned will file those with the Court as further proof of service." *Id.*

At the court's prompting, Plaintiff filed, on April 3, 2025, proof of service on the entity Defendants, of which Akina is a principal, and advised that the mailing to Akina himself, at his last known address, was returned. DE 94. The court is satisfied that Plaintiff has made reasonable efforts to notify Akina of the present motion and finds that, given Akina's position at the LifeRestore companies and his prior appearance in this case, Akina likely has been made aware of the motion. However, Akina has filed no written response.

In the present motion, Plaintiff asks the court to find that no genuine issues of material fact exist concerning whether Akina is individually liable for damages under the federal and state wage statutes. The court has reviewed the motion and proffered evidence, and is now fully apprised.

## I.    Findings of Fact

In addition to those found in its June 24, 2024 order (DE 80),[2] the court finds the following relevant facts. Unless they cite to the record, these factual findings are undisputed for purposes of the present motion. The court will not consider proffered "facts" supported solely by the operative pleading in this case. *See* Fed. R. Civ. P. 56(c)(1).

1.    Plaintiff is a licensed Physician Assistant and primary care provider.

2.    David Akina is listed as a company official and manager of Defendant LifeRestore MD USA LLC NC1 LLC in the North Carolina Secretary of State records dated April 21, 2021 and May 3, 2021. DE 54-1.

3.    In July 2021, Plaintiff entered into an agreement with Defendants David Akina and Allen Meglin to work for them in their soon-to-be-opened medical clinic, "RestoreDoc NC." Based on this offer of employment, Plaintiff resigned her previous employment, effective August 20, 2021.

4.    Thereafter, Plaintiff began working for Akina and Meglin, when she traveled to a medical office operated by Meglin in Savannah, Georgia, for training as part of her new role. Following her training in Georgia, Plaintiff returned to North Carolina on August 25, 2021.

---

[2] The court granted Plaintiff's motion for partial summary judgment against Meglin; granted in part and denied in part Meglin's motion to dismiss and motion for partial summary judgment against Plaintiff; and ruled that the action between Plaintiff and Meglin would proceed on Plaintiff's first claim under the FLSA (for overtime and minimum wages) and second claim under the NCWHA § 95-25.6 ("payday claim")). *Id.*

5.    On that date, Akina and Meglin informed Plaintiff that she would be paid at a rate of
      $52.88/hour for work done prior to the clinic's opening and that her travel expenses would
      be reimbursed.  Plaintiff was presented with an offer letter dated August 25, 2021, on
      "RestoreDoc MD" letterhead, for the "full-time position of Physician Assistant Provider,"
      with "an anticipated start date of 1 Oct 2021" (the date the clinic was expected to open), at
      a starting annual salary of $110,000.00 (plus a monthly stipend for health insurance and
      potential bonuses).

6.    On several dates in August and September, Plaintiff communicated questions and notes to
      Akina regarding her efforts in setting up the clinic.  DE 54-7, 54-8, 88-3, 88-4.

7.    On August 30, 2021, Akina and Meglin told Plaintiff to do "whatever needs to be done to
      get the clinic open" and that any incurred expenses would be reimbursed.

8.    From the end of August 2021 through September 2021, Plaintiff worked diligently to
      prepare to open the North Carolina clinic and spent thousands of dollars of her own money
      toward the effort.  Plaintiff documented and communicated these costs to Akina and
      Meglin, with the expectation that they would be reimbursed as promised.

9.    Throughout her employment, Plaintiff informed Akina and Meglin of her hours worked
      and the expenses she incurred toward opening the clinic.  Plaintiff relayed to Akina and
      Meglin that she worked in excess of forty (40) hours per week on multiple occasions.

10.   Despite repeated requests, Akina and Meglin failed to pay Plaintiff for any of her time
      worked.

11.   On September 27, 2021, Plaintiff emailed Akina and Meglin again requesting that she and
      the other employee be paid, and stating that she had worked a total of more than 150 hours
      prior to the previous week and had not received any payment.

12. Through early October 2021, Plaintiff continued to request the pay that she was due from Akina and Meglin.

13. On October 11, 2021, Plaintiff lodged a complaint with the North Carolina Department of Labor against LifeRestore, Akina, and Meglin regarding her unpaid wages.

14. A few hours later, Akina sent Plaintiff a text stating, "[w]e are regretfully rescinding our offer letter to you."

15. Plaintiff is still owed both regular wages and overtime pay, as well as all promised reimbursements.

16. Akina is listed as a company official of LifeRestore MD USA LLC NC1 LLC on the North Carolina Secretary of State's records.

17. According to Meglin, Akina approached him about forming LifeRestore.

18. Meglin has attested that Akina ran the business, was responsible for the hiring and firing, negotiation of salaries, supervising and setting employee work schedules, managing payroll, maintaining employment records, and all other similar human resources or daily business affairs of the company.

19. Meglin has also attested that Akina hired Plaintiff and supervised her.

20. In his deposition, Meglin testified that he and Akina were co-owners of LifeRestore but that Akina was responsible for operating the business, including hiring Plaintiff and paying her wages. Meglin also testified that he tried to persuade Akina to pay Plaintiff.

## II. Legal Standards

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. If "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" the court shall grant summary judgment. Fed. R. Civ. P.

6

56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (internal quotations and citations omitted). The court's role at the summary-judgment stage is not "to weigh the evidence and determine the truth of the matter" but, rather, "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Accordingly, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

When the nonmovant bears the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this initial burden, the burden then shifts to the nonmoving party to point out "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324. "Significantly, a party must be able to present the materials it cites in 'a form that would be admissible in evidence,' and supporting affidavits and declarations 'must be made on personal knowledge' and 'set out facts that would be admissible in

evidence.'" *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 573 (D. Md. 2021) (quoting Fed. R. Civ. P. 56(c)(2) & (c)(4)).

While "it is the province of the jury to resolve conflicting inferences from circumstantial evidence[,] [p]ermissible inferences must still be within the range of reasonable probability." *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.), *cert. denied*, 358 U.S. 908 (1958). It is "the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* Accordingly, when the evidence, taken in the light most favorable to the nonmovant, reveals two equally plausible alternatives, a choice of one over the other would require a reasonable jury to speculate; in such instance, summary judgment is proper.

## III. Discussion

In her motion, Plaintiff seeks partial summary judgment finding Akina liable for damages caused by his violations of the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA") and of the "payday" provision in the North Carolina Wage and Hour Act ("NCWHA"). Relevant case law instructs that this court must determine first whether Akina, an individual, is an "employer" under the wage and hour statutes. If he is, the court must then analyze, under a different standard, whether Plaintiff is an "employee" under the statutes.[3]

### A. FLSA Claims

"Individuals seeking compensation pursuant to the FLSA 'bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute

---

[3] The undisputed fact that Plaintiff had not yet signed the offer letter proposed by Defendants when she was notified that they "regretfully rescind[ed] [the] offer letter" instinctively raises the question whether Plaintiff was an "employee" authorized to bring suit under the FLSA.

employment for purposes of the Act.'" *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) (quoting *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999)).

There is no dispute in this case that Plaintiff agreed with one or more Defendants to organize and set up a medical clinic, at which she was anticipated to work as a Physician Assistant, in exchange for monetary payment. Further, no one disputes that Plaintiff performed the work to set up the clinic and was never paid. The court must determine whether Plaintiff has demonstrated that no genuine issues of material fact exist concerning whether Akina is an employer who has violated the FLSA minimum wage and overtime provisions by failing to pay Plaintiff, his employee.

1. *Is Akina an "Employer" Under the FLSA and NCWHA?*

"Because the NCWHA defines the relevant terms identically to the [FLSA], [courts] may look to federal interpretations of the FLSA for guidance." *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x 445, 451 (4th Cir. 2021) (citing 13 N.C. Admin. Code § 12.0103). The FLSA creates a cause of action against "[a]ny employer who violates" the FLSA's wage requirements, and such an employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation." *See* 29 U.S.C. § 216(b). The "FLSA conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016).

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under the FLSA, to employ means "to suffer or permit to work." 29 U.S.C. § 203(g). "Employers include those with managerial responsibilities and substantial control of the terms and conditions of the work of

9

employees." *Kerr*, 824 F.3d at 83 (quotations omitted). Thus, "[t]o determine whether the employer-employee relationship exists, courts apply the 'economic reality' test." *Id.*

The "[r]elevant factors" in analyzing the economic reality of the putative employer-employee relationship "include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quotations omitted). However, "no one factor is dispositive" (*id.*), and courts must examine "all of the circumstances and relevant evidence," *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 721 (E.D.N.C. 2009).

Plaintiff declares that in July 2021, she "entered into an agreement with David Akina and Allen Meglin to work for their soon-to-be-opened medical clinic, 'RestoreDoc NC.'" Surey decl. ¶ 3, DE 88-1. Records from the North Carolina Secretary of State reflect that in April and May 2021, Akina formed the Defendant LLC, having the same Wilmington address as the clinic. DE 54-1. According to Plaintiff, Akina and Meglin told Plaintiff she would be paid $52.88/hour for setting up the clinic and she would receive reimbursement for out-of-pocket expenses. Surey Decl. ¶ 5. Plaintiff received a letter from Akina on August 25, 2021, offering her the full-time position of Physician Assistant Provider at a starting salary of $110,000 (plus a monthly stipend for health insurance). In August and September 2021, Akina repeatedly directed Plaintiff and affirmed the work Plaintiff was doing to prepare for the clinic's opening. Eventually, on October 11, 2021, Akina notified Plaintiff that "we are regretfully rescinding our offer letter to you."

Consideration of the *Kerr* factors and the entire record leads the court to conclude that the undisputed evidence demonstrates Akina was an employer under the FLSA and NCWHA. Akina was a co-owner of the LLC at the time Plaintiff worked to open the clinic; he offered Plaintiff

employment and set the rate and method of pay; he directed and affirmed Plaintiff's work setting up the clinic; and he ultimately terminated Plaintiff's employment. This conduct would lead any reasonable employee to believe that Akina had the authority to, and did, act as an employer. Given the breadth with which this court must interpret the FLSA's definition of employer, the court finds Akina was an "employer" under the wage and hour statutes.

### 2. *Is Plaintiff an "Employee" of Akina's Under the FLSA?*[4]

Whether a worker is an employee under the FLSA is a legal question subject to de novo review. *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 240 (4th Cir. 2016). "The Supreme Court has repeatedly emphasized that the term 'employee' should be broadly interpreted under the FLSA, though 'obviously' with practical limits." *Armento*, 856 F. App'x at 451 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–24 (1992) and *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)). "In light of this breadth, the test of employment under the FLSA is one of economic reality," which "examines the circumstances of the whole activity, rather than isolated factors, or technical concepts," and "asks whether these circumstances reflect a traditional understanding of employment." *Id.* (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) and *Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007)) (cleaned up).

Depending on the circumstances, the Fourth Circuit has set forth different factors for courts to consider in determining whether a worker is an employee of the defendant. *See McFeeley*, 825 F.3d at 241 ("the court must adapt its analysis to the particular working relationship, the particular

---

[4] The court notes the Plaintiff might argue that, because default has been entered against the corporate Defendants in this case, the question whether she is an employee has been determined. However, "the determination of whether an individual is an employee . . . under the FLSA is a question of law." *Purdham*, 637 F.3d at 428; *see also Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) ("The ultimate conclusion as to whether a worker is an employee or independent contractor under the FLSA presents a legal question that we review de novo."). Judgment against the corporate Defendants has not yet been entered in this case.

11

workplace, and the particular industry in each FLSA case"). For instance, when determining whether incarcerated individuals are "employees," the Fourth Circuit instructs courts to use a three-factor test. *See Scott v. Baltimore Cnty., Maryland*, 101 F.4th 336, 343 (4th Cir. 2024) (citing *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993)). Alternatively, when examining whether a worker is either an employee or an independent contractor, the Fourth Circuit instructs courts to use a six-factor test. *See Schultz*, 466 F.3d at 304–05. Furthermore, when determining whether a worker was an employee as opposed to a volunteer, the Fourth Circuit rejected the *Schultz* six-factor test in favor of analyzing the totality of the circumstances, including the facts surrounding the principal purpose of the relationship, for whose benefit the arrangement was designed, and whether the plaintiff worked in expectation of compensation. *Armento*, 856 F. App'x at 452-53. This court finds that, in this case, particularly given the repeated use of the words "agree" and "agreement" in the proffered evidence, application of the *Schultz* test is proper.

"The touchstone of the economic realities test" under the circumstances of this case is "whether the worker is economically dependent on the business to which [s]he renders service or is, as a matter of economic reality, in business for h[er]self." *McFeeley*, 825 F.3d at 241 (citation omitted) (cleaned up). The court must consider the following six factors:

(1) the degree of control that the putative employer has over the manner in which the work is performed;

(2) the worker's opportunities for profit or loss dependent on h[er] managerial skill;

(3) the worker's investment in equipment or material, or h[er] employment of other workers;

(4) the degree of skill required for the work;

(5) the permanence of the working relationship; and

(6) the degree to which the services rendered are an integral part of the putative employer's business.

12

*Id.* (quoting *Schultz*, 466 F.3d at 304–05). Because the test is "designed to capture the economic realities" of the employee-employer relationship, "[n]o single factor is dispositive." *Schultz*, 466 F.3d at 305.

Regarding the first factor, the evidence reveals that Akina hired Plaintiff for the Physician Assistant ("PA") position and directed Plaintiff in ordering equipment and supplies and setting up the clinic; email correspondence shows that Plaintiff repeatedly communicated with both Akina and Meglin regarding the methods and tasks she performed for approved configuration of the clinic. The court finds this factor weighs in favor of finding Plaintiff to be an employee. For the second factor, Plaintiff attests that her first offer letter provided for a monthly salary and stipend for insurance benefits, as well as "potential bonuses" (Surey decl. ¶ 5); however, nothing indicates how such bonuses were to be determined. The court weighs this factor neutrally.

The third factor asks whether the worker invested in any equipment and had the ability to employ other workers. Although the evidence reflects that Plaintiff used her own money to purchase supplies for the clinic and secured the assistance of her husband in performing some set-up tasks, the court finds Plaintiff fully anticipated that Defendants would reimburse her for all expenses and nothing indicates that either Plaintiff or Defendants intended to pay Plaintiff's husband for his help. Thus, no issue exists as to whether Plaintiff used her own equipment or materials, nor as to whether Plaintiff employed other workers. This factor weighs in favor of finding Plaintiff to be an employee.

For the fourth factor, no party disputes that a high degree of skill is required for Plaintiff to work as a PA, and the court finds Plaintiff needed to use such skills in fitting the clinic. This factor weighs against an "employee" finding. However, the fifth and sixth factors—permanence of the relationship and whether the workers services are integral to the employer's business—

13

weigh in favor an "employee" finding. No party disputes that Defendants hired Plaintiff as an at will employee for an indefinite period. Further, the evidence shows that Plaintiff's services, both in setting up the clinic and in treating patients, was necessary for the LLC, particularly in that Plaintiff would be the sole (or, primary) "treater" at the clinic.

Here, the record reflects that no genuine issues of material fact exist as to whether Plaintiff constitutes an "employee," as opposed to an independent contractor or a volunteer, under the wage and hour statutes during the relevant time period. In fact, Plaintiff's work preparing for the clinic's opening and her expectation that she would be paid for such work may constitute the "bargained-for exchange of labor for mutual economic gain that occurs in a true employer-employee relationship." *See Steelman v. Hirsch*, 473 F.3d 124, 130 (4th Cir. 2007).

3.    *Was Plaintiff Engaged in Commerce or Employed in an Enterprise Engaged in Commerce?*

The minimum wage and overtime provisions of the FLSA apply to employees who are "engaged in commerce or in the production of goods for commerce, or [ ] employed in an enterprise engaged in commerce or in the production of goods for commerce." *Cook v. Nu-Tech Hous. Servs., Inc.*, 953 F.2d 1383, 1992 WL 17301, at *2 (4th Cir. Feb. 5, 1992) (citing 29 U.S.C. § 206(a)); *Talton v. I.H. Caffey Distrib. Co.*, 124 F. App'x 760, 763-64 (4th Cir. 2005) (citing 29 U.S.C. § 207(a)(1)). The FLSA defines commerce as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Here, the undisputed evidence reflects that, although Plaintiff's uncompensated work was limited to setting up a medical clinic to be operated in North Carolina, her work was, and the clinic was anticipated to be, managed by Akina, who was located in Texas, and by Meglin, who was located in South Carolina. During the time period at issue, Plaintiff, while in North Carolina, was

in frequent communication with Akina and Meglin, who were both out of state. The court finds, under these circumstances, that Plaintiff was engaged in interstate commerce, as required under the FLSA. *See Cook*, 1992 WL 17301, at *3 (where defendant "actively managed the West Virginia [workplace] from the Ohio office and [ ] engaged in frequent interstate communications and travel to facilitate that management," its employees were engaged in interstate commerce under the FLSA); *but see Ergashov v. Glob. Dynamic Transp., LLC*, 680 F. App'x 161, 162 (4th Cir. 2017) (allegations that employee truck drivers delivered products to locations solely within the State of Maryland insufficient under Rule 12(b)(6) to state FLSA claim).

### 4. *Is Akina liable under the FLSA?*

Under the FLSA, "'employ' [means] to suffer or permit to work." *Purdham*, 637 F.3d at 427 (quoting 29 U.S.C. § 203(g)). According to the Fourth Circuit, "this definition was 'not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another,' nor should it be interpreted so as to 'sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit.'" *Id.* (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)). A plaintiff must prove that her employer failed to pay her for hours worked to the employer's benefit, including any hours worked in excess of forty hours per week. 29 U.S.C. §§ 206, 207. The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216.

Plaintiff argues, "The undisputed evidence shows that Plaintiff received no compensation for the hours she spent working for Akina in preparing for LifeRestore's opening." DE 89 at 8. As set forth above, the undisputed evidence reflects that Plaintiff and Akina entered into an employment relationship in which Akina agreed to pay Plaintiff to organize and set up the medical clinic at which Plaintiff was anticipated to work as a PA. Akina promised to pay Plaintiff $52.88 per hour for this work, but Plaintiff has received no payment. The court finds that Plaintiff has demonstrated the existence of no genuine disputes of material fact as to whether Akina violated the minimum wage provision of the FLSA by failing to pay Plaintiff for hours worked between August 25, 2021 and October 11, 2021.

However, Plaintiff has not demonstrated that Akina violated the overtime provision of the FLSA; in fact, her own declaration appears to be inconsistent with respect to this question. "[T]o establish a claim for unpaid overtime wages, an employee must establish, by a preponderance of the evidence, (1) that she worked overtime hours without compensation, (2) the 'amount and extent of [her] overtime work as a matter of just and reasonable inference,' and (3) that her employer knew or should have known that she worked overtime." *Castillo v. Joann Urquhart, M.D., P.C.*, 855 F. App'x 877, 879–80 (4th Cir. 2021) (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)); *see also Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) ("[T]o state a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.").

Plaintiff attests that she started work with Defendants on or about August 23, 2021, and told Akina and Meglin "on multiple occasions, [she] worked in excess of forty (40) hours in a week." Surey decl. ¶ 8, DE 88-1; *see also id.* ¶ 14 ("I frequently worked more than 40 hours in a

workweek ....").  However, she also attests that on September 27, 2021, she told Akina and Meglin

that she "had worked over 150 hours prior to last week as well and did not receive any payment."

*Id.* ¶ 11.  The time period between August 23, 2021, and September 20, 2021, comprised four

weeks; had she worked only full time during that period, she would have worked a total of *160*

hours.  Granted, the issue is whether Plaintiff worked more than forty hours in a single work week;

however, Plaintiff does not identify when during the time period she worked more than forty hours

per week nor describe the work she performed to allow the court to draw a reasonable inference

that Plaintiff worked overtime in a single work week.  The copies of emails Plaintiff attached to

the present motion reflect her statements to Akina and Meglin regarding payments not yet made,

tasks not yet completed, and supplies not yet received, but do not describe Plaintiff's hours worked

per week nor tasks she completed in setting up the clinic.  *See* DE 88-3 – 88-8.

Accordingly, Plaintiff's motion is granted as to her FLSA claim for minimum wages, and

the court finds Akina is liable for Plaintiff's damages (yet to be proven) in this regard.  However,

because triable issues of fact remain, Plaintiff's motion is denied as to her FLSA claim for overtime

payment.

### B.  NCWHA Claim

In her Amended Complaint, Plaintiff seeks recovery under the FLSA for Defendants' "[1]

failure to pay overtime, [2] failure to pay minimum wage; and [3] retaliation."  Am. Compl. at 10.

She also seeks recovery under the NCWHA for Defendants' "[1] failure to pay overtime; [2] failure

to pay for all hours worked on a regular payday; and [3] failure to pay minimum wage."  *Id.* at 11.

Notably, North Carolina law provides exemptions to employers from liability under the NCWHA

in the following circumstances:

> The provisions of G.S. 95–25.3 (Minimum Wage), G.S. 95–25.4 (Overtime), and
> G.S. 95–25.5 (Youth Employment), and the provisions of G.S. 95–25.15(b)

17

(Record Keeping) as they relate to these exemptions, do not apply to:

> (1) Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act. . . .

N.C. Gen. Stat. § 95–25.14(a) (2003). In bringing her claims under this statute, Plaintiff must intend that Defendants meet the definition of "employer" under this section and, thus, the exemption(s) apply. In other words, because Plaintiff seeks recovery of minimum wages and overtime under the FLSA, she may not obtain such relief under the NCWHA against Defendants who meet the definition of "employer." *See Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 710 (E.D.N.C. 2011); *see also Webb v. Daymark Recovery Servs., Inc.*, 646 F. Supp. 3d 675, 688 (M.D.N.C. 2022), *reconsideration denied*, No. 1:21CV424, 2023 WL 3203164 (M.D.N.C. May 2, 2023) ("N.C. Gen. Stat. § 95-25.14 . . . exempts FLSA-covered enterprises from NCWHA's minimum wage (§ 95-25.3) and overtime (§ 95-25.4) provisions.").

However, section 95-25.6, commonly referred to as North Carolina's "payday statute," is not listed in section 95-25.14. The statute requires employers to "pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. North Carolina's courts have interpreted this statute to apply to claims seeking regular wages owed but not paid when due. *Bigelow v. Sassafras Grove Baptist Church*, 247 N.C. App. 401, 406, 786 S.E.2d 358, 363 (2016) (plaintiff's allegation that the defendant employer wrongfully failed to pay his earned wages sufficiently stated a claim under § 95-25.6); *see also Knudson v. Lenovo (United States) Inc.*, 291 N.C. App. 134, 892 S.E.2d 926, 2023 WL 6843307, at *11-*12 (N.C. App. Oct. 17, 2023) ("By the terms communicated in Plaintiff's complaint, Plaintiff's [§ 95-25.6] claim contains all necessary elements, as program participants were alleged to be entitled to [financial] awards in the event participants reached specific milestones in the review process."). Thus, while

Defendants may be exempt from Plaintiff's minimum wage and overtime claims under the NCWHA, they are *not* exempt from liability for her claim properly raised under section 95-25.6. *See Whitehead v. Sparrow Enter., Inc.*, 167 N.C. App. 178, 183, 605 S.E.2d 234, 237 (2004), *review denied*, 618 S.E. 2d 240 (N.C. July 29, 2005) ("The statute defendant relies upon for exemption does not cover either section [i.e., §§ 95-25.6 and 95-25.8] of the NCWHA."); *Daniel v. Stericycle Inc.*, No. 320CV00655RJCDCK, 2022 WL 987341, at *2 (W.D.N.C. Mar. 31, 2022) ("the plain language of N.C. Gen. Stat. § 95-25.14(a)(1) exempts overtime claims under N.C. Gen. Stat. § 95-25.4" but "[t]he statute by its terms does not exempt claims under N.C. Gen. Stat. § 95-25.6.").

Akina, like Meglin (*see* DE 80), meets the definition of "employer" under the FLSA and, thus, § 95-25.14(a) applies to exempt Plaintiff's claims against Akina for minimum wages and overtime pay under the NCWHA. However, Plaintiff also alleges that Akina violated the payday statute for failing to pay her at the time wages were due. Am. Compl., DE 30.

The payday statute provides that "[e]very employer shall pay every employee all wages . . . accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. A "'Wage' paid to an employee means compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation." *Id.* § 95-25.2(16). Courts in this circuit have held that a payday claim "premised upon unpaid regular time will be allowed to proceed." *Speight v. Lab. Source, LLC*, No. 4:21-CV-112, 2024 WL 4267914, at *6 (E.D.N.C. Sept. 23, 2024) (collecting cases). Notably, a NCWHA payday claim does not "requir[e] plaintiffs to prove that their employer expressly agreed to pay them for particular services performed" when such services were "for the benefit of the employer." *Id.* (quoting *Martinez-Hernandez v. Butterball*, 578 F. Supp. 2d 816, 822 (E.D.N.C. 2008)).

As set forth above, the undisputed evidence reflects that Plaintiff and Akina entered into an employment relationship in which Akina agreed to pay Plaintiff to organize and set up the medical clinic at which Plaintiff was anticipated to work as a PA. Akina promised to pay Plaintiff $52.88 per hour for this work, but Plaintiff has received no payment. The court finds that Plaintiff has demonstrated that no genuine disputes of material fact exist as to whether Akina violated the payday provision of the NCWHA by failing to pay Plaintiff for hours worked between August 25, 2021 and October 11, 2021. Accordingly, Plaintiff's motion is granted as to her NCWHA claim under § 95-25.6, and the court finds Akina is liable for Plaintiff's damages (yet to be proved) in this regard.

## IV.    Conclusion

For the claims at issue, Plaintiff succeeded in demonstrating the existence of no material factual issues as to whether Akina was an "employer," Plaintiff was an "employee," and Plaintiff engaged in interstate commerce, as required by the applicable statutes. Further, Plaintiff has established the absence of any factual disputes concerning whether Akina violated the FLSA minimum wage provision and the NCWHA payday statute. However, Plaintiff failed to show that no factual issues exist regarding her FLSA overtime claim against Akina; Plaintiff's evidence is vague or inconsistent in describing with sufficient specificity the extent and type of work she performed to allow the court to a draw reasonable inference that Plaintiff had worked "overtime" under the FLSA.

Accordingly, Plaintiff's Motion for Partial Summary Judgment [DE 86] is GRANTED IN PART AND DENIED IN PART. The court finds Akina liable for Plaintiff's damages caused by violations of the FLSA (minimum wages claim) and the NCWHA § 95-25.6 ("payday claim")), which are yet to be proven. Further, because triable issues remain, the motion is denied regarding

Plaintiff's claim for overtime under the FLSA against Akina. Finally, Plaintiff's NCWHA claims for overtime and minimum wages against Akina are exempt under state law and, thus, are DISMISSED WITHOUT PREJUDICE.

SO ORDERED this ___10th___ day of April, 2025.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE